SUSAN H. KORPER *vs.* NANCY D.C. WEINSTEIN, executrix.[1]

No. 01-P-576.

Middlesex. October 17, 2002. - February 24, 2003.

Present: GELINAS, DOERFER, & GREEN, JJ.

*Medical Malpractice,* Standard of care. *Doctor,* Doctor-patient relationship. *Emotional Distress. Intentional Conduct. Consumer Protection Act,* Unfair or deceptive act.

The plaintiff in a civil action failed as a matter of law to establish that a consensual sexual affair that began when the defendant was the plaintiff's physician constituted an actionable claim for medical malpractice [435-436], or that the defendant had a fiduciary duty to avoid a sexual relationship with the plaintiff [436-438]; moreover, the plaintiff failed as a matter of law to establish that the defendant acted with an intent to harm the plaintiff [438-439], or that the purely personal conduct of which the plaintiff complained constituted a business or consumer transaction that would support a claim under G. L. c. 93A [439].

CIVIL ACTION commenced in the Superior Court Department on December 11, 1997.

The case was heard by *Robert Malcolm Graham,* J., on motions for summary judgment.

*Stanley J. Spero* for the plaintiff.

*John P. Coakley (Richard J. Riley* with him) for the defendant.

DOERFER, J. The plaintiff and the defendant[2] engaged in a two-year consensual sexual affair, which was broken off by the defendant. During the course of the relationship and subsequently, the plaintiff claims, she suffered emotionally as a result of the trust and confidence she placed in the defendant. Her civil action for damages was dismissed on summary judgment. She appeals, claiming, in substance, that one additional fact

---

[1]Of the estate of Mark E. Weinstein.

[2]Because this case involves the individual's conduct rather than that of his estate, we use the term "defendant" to refer to Mark E. Weinstein.

distinguishes her case from that of all other injured lovers: they met when he was her physician. This additional fact does not save her claim for emotional distress damages.

*Background.* At age forty-seven, the plaintiff, while a Ph.D. candidate at Harvard University, initially consulted the defendant, then chief of surgery at Harvard's University Health Services (UHS), on October 14, 1994, for investigation of a breast lump. The defendant performed a biopsy on October 27, 1994, and no malignancy was found. Additional visits followed through mid-November, culminating with the defendant removing the sutures for the one-inch biopsy incision and securing the wound with bandages. During the latter visits, the plaintiff and the defendant discovered mutual interests in the area of conflict resolution, the plaintiff's field of study. The plaintiff asked to interview the defendant and they arranged to meet for lunch.

On November 30, 1994, the plaintiff met the defendant at his office and they ate lunch at a nearby restaurant. They arranged another luncheon meeting for December 3, 1994, to pursue their mutual interest further. On the appointed date, the luncheon meeting was delayed by several hours because the defendant accepted the plaintiff's invitation to her apartment, where they engaged in sexual relations. This event marked the beginning of their sexual relationship, which continued for more than two years.[3]

The defendant ended his treatment of the plaintiff at UHS once their sexual relationship began.[4] At no time did the defendant purport to provide mental health counseling, treatment, or services to the plaintiff. Their sexual encounters were not part of any treatment or therapy, and neither party claimed

---

[3]During their first sexual encounter, the defendant ripped off the dressings from the plaintiff's breast. At this point, more than five weeks had passed since the biopsy and nearly three weeks since the defendant removed the sutures in his office. The plaintiff alleges that the defendant's action of removing her bandage during sex resulted in aggravated scarring, but has presented no evidence — medical expert or otherwise — to support this allegation.

[4]They would speak on the phone while the defendant was at UHS or at a hospital, and they occasionally met at UHS during the relationship. There is no specific evidence showing that these contacts were for the purpose of seeking or rendering medical services. Although the defendant "groped" the plaintiff in empty examination rooms during these subsequent non-treatment visits, they never had intercourse in his office — only in her apartment.

or understood them to be so. In 1997, the defendant ended the relationship.[5]

*Claims.* The plaintiff brought her claims in several counts: medical malpractice, breach of fiduciary duty, intentional infliction of emotional distress, and unfair business practices under G. L. c. 93A. We consider them in turn.

1. *Medical malpractice.* It is settled that consensual sexual conduct between a medical practitioner and a patient does not constitute medical malpractice. *Roe* v. *Federal Ins. Co.*, 412 Mass. 43, 49-51 (1992) (sexual contact by dentist during treatment, whether consensual or not, was not rendering of professional services so as to be covered by malpractice insurance).[6] There are two exceptions to this rule: mishandling of the "transference phenomenon" by a psychiatrist with a patient; and sexual conduct purporting to be medical treatment. See *ibid.*; *Palermo* v. *Brennan*, 41 Mass. App. Ct. 503, 509 n.10 (1996). See also *Atienza* v. *Taub*, 194 Cal. App. 3d 388, 393-394 (1987); *Mindt* v. *Winchester*, 151 Or. App. 340, 343-345 (1997). The plaintiff argues that a kind of transference phenomenon occurs in the ordinary patient-physician relationship by virtue of the relationship. This view has been identified and rejected. *Roe* v. *Federal Ins. Co.*, 412 Mass. at 50-51. The plaintiff's proposed exception would swallow the rule.

Nor is the plaintiff aided by the affidavits supplied by her

[5]The plaintiff insisted on a written settlement agreement, and the defendant signed what she drafted. In exchange for the plaintiff's promise not to pursue civil, criminal, or administrative remedies against him, the defendant agreed to pay for the plaintiff's therapy, to give her money for maintenance, and to amend his will to instruct his executor to provide for her. Additionally, this agreement prohibited the defendant from reporting the relationship either to the board of registration of medicine or to his wife. The defendant gave more than $41,000 toward the plaintiff's living expenses during their relationship. No contract claims have been asserted based upon the agreement. Contrary to the plaintiff's argument, the recitals in the document cannot be taken as an admission creating legal liability. Compare *Morea* v. *Cosco, Inc.*, 422 Mass. 601, 603 (1996); *Zucco* v. *Kane*, 55 Mass. App. Ct. 76, 81-83 (2002), further appellate review granted, 438 Mass. 1106 (2003).

[6]This rule is supported by the great weight of authority in other jurisdictions. See *Gunter* v. *Huddle*, 724 So. 2d 544, 546 (Ala. Civ. App. 1998); *Atienza* v. *Taub*, 194 Cal. App. 3d 388, 393-394 (1987); *Mindt* v. *Winchester*, 151 Or. App. 340, 343-345 (1997). "[C]ourts do not routinely impose liability upon physicians in general for sexual contact with patients." *Simmons* v. *United States*, 805 F.2d 1363, 1366 (9th Cir. 1986).

experts, which are based on an erroneous view of the law. These affidavits state that, in the expert view of the affiants, the defendant's actions were injurious to her because of the possibility for corroding the trust between physician and patient, and fell below the standard of care for physicians. An expert opinion is required and permitted in medical malpractice cases to inform the question whether the professional services rendered by the physician deviated from the standard of care owed by the physician to the patient, thereby causing damage to the patient. See, e.g., *Collins* v. *Baron*, 392 Mass. 565, 569 (1984). Such opinions are received only on the topic of professional services. On the facts of this case, the law does not regard consensual sexual conduct between the plaintiff and the defendant as a species of medical professional services. The opinion of medical experts to the contrary is foreclosed.[7]

Further, the record does not support any inference that the defendant was providing any postoperative care once the sexual relationship began. Rather, the record shows that he ensured that other physicians took over the plaintiff's care.[8] Thus, to the extent the plaintiff's experts base their opinions on the view that the affair took place while the plaintiff was the patient of the defendant, such opinions lack foundation.

2. *Breach of fiduciary duty.* The plaintiff makes the broader claim that the defendant had a fiduciary duty to avoid a sexual relationship with her since they became acquainted in a doctor-patient relationship, even though that professional relationship was terminated once the sexual relationship began.

There is support for the argument that the defendant breached his ethical obligations by engaging in a sexual affair with a patient even though it was consensual and even though the professional relationship was terminated as soon as the affair

---

[7]The affidavits do not state that a transference phenomenon was present in this case. They only state that, assuming, as alleged by the plaintiff, that there was such a phenomenon, the defendant's conduct would constitute a violation of the standard of care.

[8]See note 3, *supra*, concerning the replacement of a dressing at the conclusion of a consensual sexual encounter at the plaintiff's home.

began.[9] See *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. 519, 522-525 (1979); *Mancini* v. *Board of Registration in Med.*, 390 Mass. 1002, 1003 (1983). Violations of medical ethics do not, however, without more, establish legal liability for damages. Cf. *Doe* v. *Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 141 (1996). Here, the plaintiff's broad claim of breach of fiduciary duty reaches past a claim of breach of medical ethics. Thus, we address the question whether, under the facts of this case, the defendant stood in a fiduciary relationship toward the plaintiff and, if so, whether the defendant breached that duty so as to warrant an award of damages.

"[T]he circumstances [that] may create a fiduciary relationship are so varied that it would be unwise to attempt the formulation of any comprehensive definition that could be uniformly applied in every case. . . . The existence of the relationship in any particular case is to be determined by the facts established." *Warsofsky* v. *Sherman*, 326 Mass. 290, 292-293 (1950). See Restatement (Second) of Torts § 874 (1979). In addition to the obvious obligation to make medical decisions in the patient's best interest,[10] a physician has a fiduciary duty to maintain the confidentiality of a plaintiff's medical records. *Alberts* v. *Devine*, 395 Mass. 59, 69, cert. denied sub nom. *Carroll* v. *Alberts*, 474 U.S. 1013 (1985). However, the existence of a fiduciary relationship does not mean that all interaction between the parties to that relationship is measured by the standards applicable to fiduciaries; the fiduciary is held to a higher standard of conduct only as to matters within the scope of the fiduciary relationship. Even though the physician-patient

---

[9]The American Medical Association Council on Ethical and Judicial Affairs has concluded that (1) sexual contact or a romantic relationship with a patient concurrent with the physician-patient relationship is unethical; and (2) sexual or romantic relationships with former patients are unethical if the physician uses or exploits trust, knowledge, or emotions or influence derived from the previous professional relationship. Sexual Misconduct in the Practice of Medicine, 266 JAMA 2741, 2743-2744 (1991).

[10]"A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Restatement (Second) of Torts § 874 comment a (1979). See, e.g., *United States* v. *Neufeld*, 908 F. Supp. 491, 500 (S.D. Ohio 1995) (patients deserve medical opinions and referrals unsullied by conflicts of interest where physician was receiving kickbacks).

relationship is one of many "familiar and well recognized forms of fiduciary relationships," *Warsofsky* v. *Sherman*, 326 Mass. at 292, the scope of the fiduciary duty is defined by the incidents and undertakings of the defendant as a physician. See *Fowles* v. *Lingos*, 30 Mass. App. Ct. 435, 441 (1991). The conduct here complained of was outside that scope.[11]

There appears no question that the trust and confidence that the plaintiff put in the defendant in this case went beyond that related to the professional services he rendered.[12] Any trust and confidence she placed in the defendant as a person, however, even augmented by circumstances that made her emotionally dependent on him, did not create a fiduciary duty in the defendant to prevent the personal relationship that developed consensually between them, especially where he terminated the physician-patient relationship as soon as the personal relationship began. The plaintiff has no recourse in the law for emotional harm caused by breaches of "trust" of this kind. Rules of law based on such considerations have been discarded. See *Quinn* v. *Walsh*, 49 Mass. App. Ct. 696, 707 (2000) (amatory actions abolished by G. L. c. 207, § 47B.)

3. *Intentional infliction of emotional distress.* The plaintiff's claim for intentional infliction of emotional distress fails, if for no other reason, because the record does not support an inference that the defendant acted with an intent to harm the plaintiff. The plaintiff now characterizes the defendant's conduct as "outrageous," but it is clear that she is referring to her view that the defendant breached ethical norms in permitting the af-

---

[11]We decline the plaintiff's invitation to expand the scope of the fiduciary duty a doctor owes a patient to include conduct beyond the context of medical treatment, as the Nevada Supreme Court did in *Hoopes* v. *Hammargren*, 102 Nev. 425, 431-432 (1986). The *Hoopes* court permitted recovery for a patient who can prove that (1) the physician held a superior authoritative position in the professional relationship, (2) the patient was vulnerable as a result of illness, (3) the physician exploited the vulnerability, and (4) the exploitation was the proximate cause of provable harm. *Id.* at 432. The Nevada approach appears to stand alone in imposing liability for breach of fiduciary duty for physician sexual misconduct occurring outside the realm of medical treatment.

[12]The expert opinion supplied in the two affidavits discussed above is also mistakenly addressed to legal and not medical professional issues when it concludes that the defendant's actions breached the fiduciary relationship inherent in a professional medical relationship. See discussion *supra*.

fair to bloom. This conduct does not satisfy the elements of a claim for intentional infliction of emotional harm.[13] A consensual sexual relationship in this Commonwealth will not support a claim for intentional infliction of emotional distress. *Quinn* v. *Walsh*, 49 Mass. App. Ct. at 707. See *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997). Summary judgment for the claim of intentional infliction of emotional distress was proper.

4. *Unfair or deceptive trade practices.* As previously discussed, the conduct of which the plaintiff complains was purely personal and not a business or consumer transaction. General Laws c. 93A does not apply. *Kantrovitz* v. *Academy of Physical & Social Dev. Corp.*, 370 Mass. 858, 858 (1976). *Lantner* v. *Carson*, 374 Mass. 606, 607-608 (1978).

Contrary to the plaintiff's contention, a professional who violates a professional ethical rule does not become liable under G. L. c. 93A in all circumstances. For example, the "disciplinary rules [for lawyers] provide standards of professional conduct . . . and do not in and of themselves create independent causes of action." *Doe* v. *Nutter, McClennen & Fish*, 41 Mass. App. Ct. at 141. That principle must apply to physicians as well. The absence of a right of the plaintiff to recover damages for violations of ethical norms by the defendant does not leave the public unprotected. See *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. at 522-523.

*Judgment affirmed.*

---

[13]To prevail on her claim for intentional infliction of emotional distress, the plaintiff must establish that "(1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, . . . (2) the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." *Payton* v. *Abbott Labs*, 386 Mass. 540, 555 (1982), citing *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 145 (1976).