PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANITA MASON ROWLAND,
        *Plaintiff-Appellant,*

v.

AMERICAN GENERAL FINANCE,
INCORPORATED,
        *Defendant-Appellee.*

No. 01-2481

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
James C. Turk, District Judge.
(CA-97-16-L)

Argued: February 26, 2003

Decided: August 12, 2003

Before WILKINS, Chief Judge, and WILKINSON and
MOTZ, Circuit Judges.

Vacated in part and remanded by published opinion. Judge Motz
wrote the opinion, in which Chief Judge Wilkins and Judge Wilkinson joined.

## COUNSEL

**ARGUED:** Terry N. Grimes, FRANKLIN COMMONS, Roanoke,
Virginia, for Appellant. Robert Cornelius Wood, III, EDMUNDS &
WILLIAMS, P.C., Lynchburg, Virginia, for Appellee. **ON BRIEF:**
Kristine H. Smith, EDMUNDS & WILLIAMS, P.C., Lynchburg, Virginia, for Appellee.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Anita Mason Rowland appeals a judgment in favor of her former employer, American General Finance, Inc., in this Title VII sex discrimination case. The district court abused its discretion in denying Rowland's request for a mixed-motive jury instruction on her failure-to-promote claim. Accordingly, we must vacate that judgment and remand for further proceedings.

I.

Rowland began working for American General, a consumer lending company, in June 1989 as an Administrative Assistant Manager, first in the Danville, Virginia branch and then in the Lynchburg, Virginia branch. In March 1990, Rowland resigned from American General, apparently because the company did not promote her to branch manager. American General then rehired Rowland in July 1990 as an administrative assistant in the Lynchburg office. In September 1991, George Roach, the director of operations for American General who was responsible for the various district offices, promoted Rowland to the position of branch manager of the Lynchburg office.

Several years later, in July 1994, Roach asked Rowland if she would be willing to transfer to the Danville office, specifically with the aim of turning the office around. Rowland contends that she was reluctant to go to Danville, but that she felt pressured by Roach. She alleges that Roach promised her that she "would be the next person to be promoted" to District Manager if she would transfer to Danville. Although it is not clear exactly what Roach said to Rowland, there is no dispute that Roach did in fact consider Rowland to be a candidate for the position of district manager. Rowland agreed to the transfer, and moved to the Danville office in the summer of 1994. Over the next year, under her stewardship, the performance of the Danville office improved.

However, notwithstanding its need to appoint a new district manager on three occasions in 1995, American General never promoted

Rowland to that position. In February 1995, American General rejected Rowland for a district manager position in Tidewater, Virginia, awarding the position instead to a male candidate. Several months later, after a reorganization of American General's operations led to an opening in the district manager position for northern Virginia, the company, on Roach's recommendation, promoted a minority female candidate rather than Rowland. Finally, in December 1995, when the district manager position for Lynchburg opened up, Roach promoted an African American male candidate to the position after considering four or five candidates, including Rowland.

Indisputably, Rowland's performance reviews revealed sufficient qualifications for a promotion to the district manager position. Indeed, throughout her employment with American General, Rowland received "favorable annual performance reviews" and annual merit-based pay increases. Her supervisors generally found that her job performance exceeded standards, that she was extremely dedicated and hard working, and that she comported herself with a high-level of professionalism.

At the same time, however, Rowland's annual reviews from 1995 and 1996 suggested that she needed to work on her "people skills." Moreover, shortly after American General refused to promote Rowland for the third time, Roach received a copy of a written complaint that a customer, who was apparently dissatisfied with the way Rowland had handled his attempt to cancel a loan, had filed with the State Corporation Commission. Upon inquiring into the matter, Roach learned that several employees and former managers felt that Rowland had problems with her "people skills." Specifically, Roach learned that Rowland's supposed difficulty in checking her ambitions and her inability to delegate sometimes alienated those who worked with her.

Roach met with Rowland in February 1996 to discuss the reasons why she had not been promoted. According to Roach, he recounted some of the reported problems and suggested that she needed to work on her people skills if she wanted to be promoted. Rowland contends, however, that when she pushed Roach on why she had not been promoted, Roach stated plainly, "I just don't need another woman in this position, particularly one like Shelby Bennett." According to Row-

land, this confirmed what she had suspected for some time. In fact, when Rowland had previously voiced her concerns to the same Shelby Bennett, a female district manager at American General, Bennett responded: "that's just life at American General. That's the way it is. The men run the company, and you just have to do what they say."

Frustrated with her lack of promotion, Rowland resigned in March 1996. The following month, she filed a complaint with American General. The company responded by letter dated July 8, 1996. Two months later (September 1996), Rowland filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that American General refused to promote her because of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e-2000e-17 (West 1994 & Supp. 2003).

On March 12, 1997, after receiving a right-to-sue letter from the EEOC, Rowland filed the initial complaint in this action, alleging, *inter alia*, refusal to promote and constructive discharge in violation of Title VII's prohibition on sex discrimination. Two months later, on May 15, 1997, American General moved to dismiss Rowland's constructive discharge claim on the ground that she had failed to raise this claim in her EEOC complaint. Because both parties offered evidence outside the pleadings in support of, or opposition to, the motion to dismiss and both recognized that the court could treat the motion as one for summary judgment if it relied on this evidence, *see* R. Vol. 3; R. Vol 1, Tab 5, the district court treated the motion as one for partial summary judgment and granted it in an order dated July 16, 1997. American General later moved for summary judgment on Rowland's remaining failure-to-promote claim. The district court also granted that motion (order dated August 13, 1998), on the ground that Rowland had not filed her complaint with the EEOC within the 180-day limitations period. On September 9, 1998, Rowland appealed, raising a single issue: "whether the district court erred by concluding that the statute of limitations for filing a charge of discrimination is 180 days instead of 300 days." We vacated and remanded, concluding that state law did indeed extend the limitations period to 300 days. *See Rowland*

*v. Am. Gen. Fin., Inc.*, 1999 WL 147829 (4th Cir. Mar. 18, 1999) (unpublished).[1]

On remand, American General again moved for summary judgment on Rowland's failure-to-promote claim. The district court denied the motion. The parties tried the case before a jury, which rendered a verdict for American General. Rowland then filed this appeal. We held the case in abeyance pending a decision by the Supreme Court in *Desert Palace, Inc. v. Costa*, 539 U.S. ___, 123 S. Ct. 2148 (2003), which the Court issued on June 9, 2003. Accordingly, this case is now ripe for adjudication.

## II.

Rowland first and principally argues that the district court erred when it refused to provide a mixed-motive jury instruction at the conclusion of her trial on her failure-to-promote claim.

We review challenges to jury instructions for abuse of discretion. *South Atlantic Ltd. P'shp v. Riese*, 284 F.3d 518, 530 (4th Cir. 2002). Instructions will be considered "adequate if 'construed as a whole, and in light of the whole record, [they] adequately [inform] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party.'" *Id.* (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987)). If we find the instructions flawed, we will not reverse "unless the error seriously prejudiced the challenging party's case." *Id.* (citation omitted).

---

[1]Rowland now contends that the district court erred in its July 16, 1997 order finding that she had failed to include her constructive discharge claim in her EEOC complaint and so granting partial summary judgment to American General on that claim. However, Rowland did not include that contention in her initial September 9, 1998 appeal to this court. Given that she had the opportunity (indeed the duty) to raise this and all other appealable issues in her initial appeal, we conclude that she has waived appellate consideration of this claim. *See Sweat v. City of Fort Smith*, 265 F.3d 692, 696 (8th Cir 2001); *Schering Corp. v. Illinois Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996); *see also Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502, 505 (4th Cir. 1992).

In this case, the district court rejected Rowland's specific request for a mixed-motive instruction (*i.e.*, an instruction that would allow the jury to find that American General violated Title VII if gender was at least a motivating factor in its decision not to promote her).[2] Instead it instructed the jury that if American General "chose not to promote Ms. Rowland for any other reason than Ms. Rowland's gender, then Ms. Rowland cannot recover, and you must find your verdict for the defendant."[3] The court explained: "I don't think this is a mixed motive case at all. . . . This is a very simple case. And it's whether or not they did not promote her to district manager because of her

---

[2]The specific jury instruction requested by Rowland reads as follows:

Your verdict must be for the plaintiff on plaintiff's sex discrimination claim, if all the following elements have been proved by the greater weight of the evidence:

First, defendant failed to promote plaintiff; and

Second, plaintiff's gender was a motivating factor in the defendant's decision.

If either of the above elements has not been proved by the greater weight of the evidence, your verdict must be for the defendant and you need not proceed further in considering this claim.

[3]The relevant section of the instructions offered by the district court reads in its entirety:

The court charges the jury that in determining whether plaintiff Rowland is entitled to recover any damages, you must decide one (1) issue, whether Rowland has proved, by a preponderance of the evidence, that her gender was the determinative factor in the defendant's, American General Finance, Incorporation [sic] not promoting her to district manager.

In other words, for Mrs. Rowland to recover, she must prove, by a preponderance of the evidence, that but for the fact that she is a female, she would have been promoted to district manager by the defendant, American General Finance, Incorporation [sic]. If the defendant, American General Finance, Incorporation [sic] chose not to promote Mrs. Rowland for any other reason than Mrs. Rowland's gender, then Mrs. Rowland cannot recover, and you must find your verdict for the defendant, American General Finance, Incorporation [sic].

gender." As the Supreme Court's recent unanimous decision in *Costa* makes clear, however, the district court abused its discretion in refusing to give the requested mixed-motive instruction.

Title VII has long prohibited employment practices that "discriminate against any individual . . ., because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1) (West 1994). Moreover, since 1991, Title VII has also outlawed employment discrimination in mixed-motive cases, that is, cases where both legitimate and illegitimate reasons motivated the employment decision. *See* 42 U.S.C.A. § 2000e-2(m) (providing that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice").

Prior to *Costa*, however, "the Courts of Appeals [were] divided over whether a plaintiff must prove by direct evidence that an impermissible consideration was a 'motivating factor' in an adverse employment action." *Costa*, 123 S. Ct. at 2151-52. In *Costa*, the Supreme Court clarified that mixed-motive plaintiffs "need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor'" for the contested employment practice. *Id.* at 2155. In reaching this holding, the Court expressly rejected the heightened "direct evidence" standard, previously embraced by this and other circuits, requiring plaintiffs to proffer evidence of conduct or statements that both reflected discriminatory animus and bore directly on the contested employment decision. *See id.* at 2150, 2152. Instead, the *Costa* Court concluded that plaintiffs could use direct *or* circumstantial evidence to make the showing necessary to merit a mixed-motive instruction. *Id.* at 2153-54.[4]

Thus, in *Costa*, the Court found that the plaintiff's circumstantial evidence of sex discrimination in a series of disciplinary actions ultimately ending in her termination sufficed to merit a mixed-motive

---

[4]In *Costa*, the Court refused to decide "when, if ever, [42 U.S.C.A. § 2000e-2(m)] applies outside of the mixed-motive context." *Costa*, 123 S. Ct. at 2151 n.1. We decline to do so as well.

instruction. Specifically, the plaintiff, who was the sole female ware-house worker and heavy equipment operator for a Las Vegas casino, presented evidence that she had been subjected to "stalking" by one of her supervisors, harsher discipline than men for the same conduct, less favorable treatment than men in the assignment of overtime, stacking of her disciplinary record, and sex-based slurs from her supervisors. *Id.* at 2152. Although none of this evidence was "direct," the Court found that it provided a sufficient basis for a reasonable jury to conclude that sex had been a motivating factor in the employer's decisions to discipline and terminate her. *Id.* at 2155. Consequently, the Court affirmed the lower court's decision to grant the mixed-motive instruction.

Applying the *Costa* standard to the facts of this case, it is clear that Rowland offered sufficient evidence to support a mixed-motive instruction. This includes evidence that (1) Roach had the authority to promote a person to district manager; (2) Roach knew of Rowland's undisputed qualifications for and interest in that position; (3) Roach assertedly stated to Rowland at their February 1996 meeting: "I just don't need another woman in this position"; and (4) Shelby Bennett purportedly stated to Rowland in response to Rowland's expressions of concern about the lack of promotional opportunities for women at American General: "that's just life at American General. That's the way it is. The men run the company, and you just have to do what they say." In sum, Rowland provided evidence that Roach — the supervisor who knew of her qualifications for and interest in the district manager position and who had the power to promote her but did not do so — told her that he did not need any more women in the position that she sought, as well as statements by another female superior suggesting that sex was a "motivating factor" in employment decisions at American General. Under *Costa*, this evidence certainly suffices to merit a mixed-motive instruction.

We recognize, of course, that the record also contains evidence indicating that Rowland's supervisors felt that she needed to work on her "people skills" before she would be ready for the district manager position. It is possible that Rowland's shortcomings in this area could have provided the sole basis for denying her the promotion she sought. It is also possible, however, that her alleged "people skills" deficiency constituted part of a larger mix of motivations, including

the fact that she was a woman, that collectively drove the decision not to promote her. In any event, given the evidence that Rowland presented suggesting that sex was at least one of the motivating factors behind American General's decision not to promote her, a reasonable jury, properly instructed, could have decided the matter in her favor.[5] We conclude, therefore, that the district court abused its discretion in refusing to give the mixed-motive instruction. (We note that the district court did not have the benefit of *Costa* when it made its ruling.)

Moreover, there is no question that without the mixed-motive instruction, Rowland had almost no chance of prevailing. Had the district court given the requested instruction, on the other hand, it is at least possible that the jury would have found that gender was "a motivating factor" in American General's failure to promote Rowland. The refusal to give the instruction thus did "seriously prejudice[ ]" Rowland's case. *South Atlantic*, 284 F.3d at 530. Accordingly, we must vacate the judgment and remand for further proceedings.

### III.

Rowland also argues that the district court committed certain evidentiary errors at trial. Because these issues may arise on remand, we briefly address them here.

---

[5]Whether Rowland would be entitled to damages upon receiving a favorable jury verdict would depend on whether American General could successfully avail itself of the affirmative defense provided under the statute. *See* 42 U.S.C.A. § 2000e-5(g)(2)(B) (West 1994). As the *Costa* Court explained, if the "complaining party" succeeds in proving a violation under this statute the employer is then entitled to "a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff." *Costa*, 123 S. Ct. at 2151. Specifically, if the employer "demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor," 42 U.S.C.A. § 2000e-5g(2)(B), the remedies available to the plaintiff "include only declaratory relief, certain types of injunctive relief, and attorney's fees and costs." *Costa*, 123 S. Ct. at 2151.

A.

First, Rowland maintains that the district court improperly admitted a letter that Albert Terry, an American General customer, had sent to the Virginia State Corporation Commission, which in turn forwarded it to American General. Terry complained of his treatment by the company and by Rowland in particular (although he did not mention her by name) when he tried to cancel a loan that he had arranged with American General. At trial, American General sought to introduce the letter during Roach's testimony regarding Rowland's lack of "people skills." Although Rowland objected to the letter as inadmissible hearsay, the district court admitted it, indicating that either it was not hearsay or qualified for the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). After the court admitted the letter, Roach read it to the jury, and recounted an altercation that he had with Rowland when he raised the issue with her and told her to cancel Terry's loan.

We review a district court's evidentiary rulings for abuse of discretion. *See, e.g.*, *United States v. Robinson*, 275 F.3d 371, 383 (4th Cir. 2001). Despite this deferential standard of review, however, we believe that the district court abused its discretion in admitting the Terry letter.

The trial record clearly demonstrates that American General introduced the letter with the intent to use it as evidence of Rowland's lack of people skills. Consequently, American General did not submit the letter for anything other than proof of the matter asserted: that Terry had been treated poorly by Rowland and, by extension, that Rowland had problems with her people skills.[6] Because it was hearsay, the Terry letter could only be deemed admissible if it fit within one of the exceptions to the hearsay rule.

---

[6]If, in fact, the district court did not admit the letter to prove the truth of the matter asserted, we fail to see its relevance. And even if the letter was somehow relevant under these circumstances, Federal Rule of Evidence 403 would prevent its admission given its very low probative value as compared to the obvious danger of unfair prejudice that would result from its admission.

None of the recognized exceptions to the hearsay rule provides a basis for admitting the Terry letter, and American General provides no argument in its appellate brief that the letter fits within any of those exceptions. *See* Fed. R. Evid. 803 and 804. To the extent that the district court admitted the letter under the business records exception contained in Federal Rule of Evidence 803(6), and the record is not entirely clear on this matter, we fail to see how the letter qualifies under that exception.

To qualify for the business records exception, the document must be prepared by someone acting "in the course of a regularly conducted business activity." Fed. R. Evid. 803(6). "If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." Fed. R. Evid. 803 advisory committee's notes; *see also Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342-43 (10th Cir. 1995). Clearly, no one at American General, or the State Corporation Commission for that matter, prepared the Terry letter, let alone prepared it "in the course of a regularly conducted business activity." Moreover, even if the letter could be considered part of a larger business record (*i.e.*, a record of customer complaints referred from the State Corporation Commission), this would present a double hearsay problem, which would still require that the Terry letter qualify under one of the exceptions or that American General demonstrate standard verification procedures for customer complaints. *See* Fed. R. Evid. 805 (requiring that each instance of hearsay meet one of the exceptions to the hearsay rule in order to be admissible); *see also United States v. Mitchell*, 49 F.3d 769, 778 (D.C. Cir. 1995). Nothing in the record supports either of these routes to admissibility.

Alternatively, American General argues for the first time on appeal that even if the letter did not qualify for admission under any of the specific hearsay exceptions identified in Rules 803 or 804, it was nonetheless admissible under the residual hearsay exception, which governs the admissibility of hearsay statements not covered by those rules. *See* Fed. R. Evid. 807. But Rule 807 permits admission of a statement under this exception only if, *inter alia*, the proponent provides the opposing party proper notice that it will rely on this excep-

tion. *Id*. Because American General did not rely on this exception or cite Rule 807 at trial, it obviously failed to provide the required advance notice to Rowland. *See, e.g.*, *Herrick v. Garvey*, 298 F.3d 1184, 1192 n.6 (10th Cir. 2002) (rejecting effort to use the residual hearsay exception on ground that proponent failed to provide adverse party with prior notice of intent to utilize the exception). Accordingly, American General's attempt on appeal to use Rule 807 to justify admission of the letter fails.

Because the letter does not qualify for any of the exceptions to the hearsay rule, the district court abused its discretion in admitting the Terry letter.

## B.

Finally, Rowland argues that the district court erred when it allowed, over her objections, American General to offer witnesses and exhibits at trial that it failed to timely identify during discovery. Specifically, Rowland argues that American General violated Federal Rule of Civil Procedure 26(a)(3), which requires parties to disclose information concerning witnesses and exhibits to other parties "at least 30 days before trial," by filing its pretrial disclosures twenty-eight days prior to the commencement of trial. She contends that because American General failed to request an enlargement of time under Federal Rule of Civil Procedure 6(b), the district court "should have precluded American General from offering witnesses and exhibits at trial." Brief of Appellant at 26. Rowland also argues that the district court erred in allowing American General to call Kirk Shields (whom Rowland deposed prior to trial) as a witness at trial because American General had never identified him in its pretrial disclosures. A district court has "wide latitude in controlling discovery and . . . its rulings will not be overturned absent a showing of clear abuse of discretion." *Ardrey v. United Parcel Service*, 798 F.2d 679, 682 (4th Cir. 1986); *see also Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996). Under Federal Rule of Civil Procedure Rule 37(c), a "party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, *unless such failure is harmless*, permitted to use as evidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1)

(emphasis added). Rule 37(c)(1) thus does not require witness preclusion for untimely disclosure if missing the deadline is harmless.

In this case, although American General does appear to have violated the technical requirements of Rule 26 (missing the thirty-day pretrial deadline by two days and failing to identify one of the witnesses who testified), we see no basis for concluding that the district court abused its discretion in allowing American General to offer the witnesses and exhibits. Rather, the record indicates that Rowland had ample opportunity to prepare for the witnesses and exhibits put forward by American General. Moreover, Rowland makes no argument on appeal that the alleged errors committed by the district court in managing the discovery in this case prejudiced her ability to prepare for and conduct her case at trial. Accordingly, we conclude that the district court acted well within its discretion in allowing American General to offer those witnesses and exhibits at trial even though they were not timely identified during discovery.

## IV.

For all of these reasons, the judgment of the district court is vacated in part and remanded for further proceedings.

*VACATED IN PART AND REMANDED*