**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-1477**

———————

JOSEPH CLEMENTE, Administrator of the Estate
of Paige Denise Prentice,

                                        Plaintiff - Appellant,

        versus


JOHN P. ROTH, Representative of the Estate of
Charles R. Cardany, M.D., deceased; UNITED
STATES OF AMERICA,

                                        Defendants - Appellees.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  William Connelly, Magistrate Judge.  (CA-
01-865-WGC)

———————

Argued:  March 21, 2006              Decided:  April 20, 2006

———————

Before WILKINS, Chief Judge, and WILLIAMS and SHEDD, Circuit
Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Theresa M. Blanco, EATON & MCCLELLAN, Philadelphia,
Pennsylvania, for Appellant.  Karen Roberts Turner, HAMILTON,
ALTMAN, CANALE & DILLON, L.L.C., Bethesda, Maryland; Tarra R.
DeShields-Minnis, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellees.  **ON BRIEF:** Allen Theophilus Eaton, III,
THE EATON LAW FIRM, P.L.L.C., Washington, D.C., for Appellant.
Nadira Clarke, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for the United States, Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Joseph Clemente, Administrator of the Estate of Paige Denise Prentice, appeals three rulings in this suit arising out of Prentice's medical treatment for breast cancer. Finding no error, we affirm.

I.

In 1993, Dr. Charles R. Cardany contracted with the National Institutes of Health (NIH), which the United States owns and operates, to serve as an independent contractor performing medical services, including plastic surgery, for NIH's patients. This contract was renewed annually through the time period relevant to this case.

Prentice was diagnosed with breast cancer in February 1997. She approached NIH, hoping to take part in a study concerning preoperative chemotherapy. Although NIH officials determined that Prentice was not a good candidate for the study, they informed her that she could undergo a bilateral mastectomy and a simultaneous breast reconstruction at NIH. When Prentice decided to do so, NIH assigned her Dr. David Danforth for the mastectomy and Dr. Cardany for the reconstruction.

The doctors performed the surgery on April 23, 1997. Prentice had a follow-up appointment with Dr. Cardany in approximately June 1997, at the end of which Dr. Cardany asked Prentice to dinner. Thus began a six-week consensual sexual relationship.

2

During this relationship, Prentice developed an infection with her implants. When Prentice asked Dr. Cardany about the implants, he told her there was no problem. However, when Prentice subsequently developed a high fever, Dr. Cardany sent her to another physician who informed her that the implants would need to be removed. Dr. Cardany performed the procedure.

Sometime in 1999, Prentice was diagnosed with advanced metastic cancer, from which she eventually died on July 21, 2001. Before her death, Prentice filed a medical malpractice suit against John P. Roth, the Personal Representative of Dr. Cardany, who had died following the events at issue in the suit. Prentice maintained that the complications with her implants and the long recovery period following her breast reconstruction delayed her chemotherapy. After Prentice's death, Clemente was substituted for her as a party. He amended the complaint in December 2001, adding a claim against the United States based on Dr. Cardany's negligence and on NIH's negligence in hiring Dr. Cardany. The United States moved to dismiss the claim against it on the ground that, because Dr. Cardany was an independent contractor rather than an employee, the Government was protected from liability for any malpractice by Dr. Cardany under the Federal Tort Claims Act, see 28 U.S.C.A. § 1346(b) (West Supp. 2005). The district court granted the motion with regard to any claim of vicarious liability for Dr. Cardany's negligence, but granted Clemente leave to amend the complaint once more to clarify the negligent hiring claim.

3

Prentice's second amended complaint alleged four causes of action, only the first two of which are relevant to this appeal. The first alleged negligence on the part of Dr. Cardany in advising Prentice of the risks attendant to the procedure employed in the breast reconstruction surgery and in diagnosing and treating her infection. The second alleged negligence by NIH in hiring and retaining Dr. Cardany. That count alleged that Dr. Cardany was under active supervision by the Maryland Board of Physician Quality Assurance for a substance abuse problem and that NIH failed to make an adequate investigation before granting privileges to Dr. Cardany and selecting him to operate on Prentice (the "negligent credentialing claim"). The United States moved to dismiss, or in the alternative, for summary judgment. The district court granted summary judgment against Clemente on the negligent credentialing claim, concluding that he had failed to create a genuine issue of material fact regarding whether the hospital would have rejected Dr. Cardany's application had it known all of the relevant facts.

Clemente thereafter amended his complaint once again, this time to allege that Dr. Cardany committed malpractice by engaging in a sexual relationship with Prentice and to request punitive damages based on Dr. Cardany's allegedly willful, wanton, and reckless conduct. In light of the amendment, the parties agreed that the trial would be bifurcated, with a first trial resolving liability and damages unrelated to the sexual relationship, and with all issues relating to the sexual relationship to be determined in a separate trial.

After the first trial, the jury returned a verdict in Roth's favor on the negligence issues, leaving for resolution only the claim of malpractice arising out of the sexual relationship. Roth successfully moved in limine, prior to the trial of this claim, to exclude as inadmissible hearsay a letter written by Prentice to Dr. Danforth. The letter concerned the decision of what plastic surgeon would be chosen to complete Prentice's breast reconstruction after the removal of her implants. In the letter, Prentice asked Dr. Danforth to refer her to two plastic surgeons so that she could meet with them and then select the one she preferred. She noted that "[t]he fundamental ethical boundaries broken by Dr. Cardany and the low level of care provided by him ha[d] left [her] feeling extremely violated and depressed," such that she felt that she needed "extra support from [Dr. Danforth] and NIH in obtaining peace of mind and good health in a timely manner." J.A. 538.

The district court rejected Clemente's contention that the letter was admissible under the business records exception to the hearsay rule because Prentice, the supplier of the information in the letter, did not prepare the letter "in the course of a regularly conducted business activity." Fed. R. Evid. 803(6); see Rowland v. Am. Gen. Fin., Inc., 340 F.3d 187, 194-95 (4th Cir. 2003). And, the court ruled that the letter could not come in as a statement for purposes of medical diagnosis or treatment because the information was not of the type that would have been reasonably relied on by a physician in treatment or diagnosis. See Fed. R.

5

Evid. 803(4); Morgan v. Foretich, 846 F.2d 941, 949 (4th Cir. 1988).

Subsequently, the second trial commenced without a jury. At the close of evidence, the district court found against Clemente. As is relevant here, the court concluded that Dr. Cardany's sexual relationship with Prentice would not constitute medical malpractice under Maryland law. The court found it persuasive that courts from other jurisdictions had held almost unanimously that, other than a mental health professional or a doctor who essentially takes on the role of a mental health professional, a doctor who does not induce his patient to have sexual relations with him as necessary for medical treatment does not commit medical malpractice simply by engaging in sexual relations with his patient. See Gunter v. Huddle, 724 So. 2d 544, 546 (Ala. Civ. App. 1998); Korper v. Weinstein, 783 N.E.2d 877, 879-80 (Mass. App. Ct. 2003); Odegard v. Finne, 500 N.W.2d 140, 143 (Minn. Ct. App. 1993); Iwanski v. Gomes, 611 N.W.2d 607, 614 (Neb. 2000); Darnaby v. Davis, 57 P.3d 100, 104 (Okla. Civ. App. 2002). But see Hoopes v. Hammargren, 725 P.2d 238, 242-43 (Nev. 1986) (holding that patient who engaged in consensual sexual relations with her doctor while they had an ongoing doctor-patient relationship may establish liability against doctor for breach of fiduciary duty if she shows that the doctor "held a superior authoritative position in the professional relationship," "that, as a result of [the patient's] illness, she was vulnerable," and that the doctor proximately caused her harm by "exploit[ing] the vulnerability").

6

II.

Clemente challenges the orders granting summary judgment against him on the negligent credentialing claim and granting judgment against him on the claim based on the sexual relationship. Clemente also contends that the district court erred in excluding from evidence Prentice's letter to Dr. Danforth. Having reviewed the record, the parties' briefs, and the applicable law, and having had the benefit of oral argument, we find no error and affirm on the reasoning of the district court.

<u>AFFIRMED</u>