**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-1146**

———————

SHANA L. MARON, a/k/a Shana L. Kennedy; ERIN HOFBERG; GETRA
HANES,

     Plaintiffs - Appellants,

  v.

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY,

     Defendant - Appellee.

———————

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke. James C. Turk, Senior
District Judge. (7:08-cv-00579-JCT)

———————

Argued: December 4, 2012    Decided: January 31, 2013

———————

Before NIEMEYER, KEENAN, and DIAZ, Circuit Judges.

———————

Affirmed in part, reversed in part, and remanded by unpublished
per curiam opinion.

———————

**ARGUED:** Nicholas Woodfield, THE EMPLOYMENT LAW GROUP, PC,
Washington, D.C., for Appellants. Marvin Hudson McClanahan,
BREWSTER, MORHOUS, CAMERON, CARUTH, MOORE, KERSEY & STAFFORD,
PLLC, Bluefield, West Virginia, for Appellee. **ON BRIEF:** R.
Scott Oswald, THE EMPLOYMENT LAW GROUP, PC, Washington, D.C.,
for Appellants. Kay K. Heidbreder, Mary Beth Nash, VIRGINIA
POLYTECHNIC INSTITUTE & STATE UNIVERSITY, Blacksburg, Virginia,
for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal addresses certain employment discrimination claims brought by three employees against their former employer. Shana Maron, Getra Hanes, and Erin Hofberg alleged that Virginia Polytechnic Institute and State University (Virginia Tech) violated the Equal Pay Act (EPA), 29 U.S.C. § 206(d), by paying female employees less than male employees performing the same work (wage claims). Maron also alleged that Virginia Tech retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), based on her reports of sex discrimination (retaliation claim).

In a jury trial, at the close of the evidence, the district court determined that Hofberg's wage claim was time-barred and entered judgment as a matter of law in favor of Virginia Tech on that claim. The jury returned verdicts in favor of Maron and Hanes on their wage claims, awarding them $25,000 and $15,000, respectively, and awarding Maron $61,000 on her retaliation claim. After considering Virginia Tech's post-trial motions, the district court set aside the verdicts, entering judgment as a matter of law on Maron's retaliation claim and granting a new trial on the wage claims of Maron and Hanes. A second jury trial resulted in a judgment in favor of Virginia Tech on those wage claims.

On appeal, the plaintiffs challenge the district court's decision to set aside the jury verdicts in the first trial, and the court's entry of final judgment on Hofberg's wage claim. Upon our review, we reverse the district court's entry of judgment as a matter of law on Maron's retaliation claim, affirm the court's award of a new trial on Maron's and Hanes' wage claims, and affirm the court's entry of judgment as a matter of law on Hofberg's wage claim on the basis that it was time-barred.

I.

The evidence regarding the wage claims and the retaliation claim showed that Maron began working at Virginia Tech in March 2006 as an Assistant Director of Development for Fine and Performing Arts, with an annual salary of $49,000. Maron's salary increased to $57,225 when she changed positions and began raising funds for the College of Engineering.

In May 2006 and in October 2006, Virginia Tech hired both Hofberg and Hanes as Regional Directors of Major Gifts. Both Hofberg and Hanes were paid $53,500 annually.

The plaintiffs presented evidence that three male employees of Virginia Tech, who were hired for the same or similar

4

fundraising positions as the plaintiffs[1] (male comparators), were paid higher annual salaries, between $61,000 and $67,000.

The plaintiffs also presented evidence regarding statements made by Robert Bailey, Senior Regional Director for Major Gifts, who supervised both Hanes and Hofberg. In April 2007, Maron expressed an interest in leaving her fundraising position for an open position with Major Gifts. According to Maron, Bailey asked her what salary she expected to receive if she were offered the position. Maron answered $68,500, because that was the salary earned by the male employee who previously held the position. Maron testified that Bailey responded, "[The previous male employee] was the head of his household and had mouths to feed, and that's why we paid [him] what we paid him."

Maron also testified that Bailey told her that hiring someone like Maron who was "young, newly married" and in "child-bearing years" would be a "liability," because the person might "[be] out [of work] for a significant amount of time." Maron ultimately withdrew her candidacy for the position with Major Gifts. Maron reported this conversation to a human resources representative and to various supervisors.

---

[1] The parties stipulated before trial that the various positions held by the plaintiffs and the male comparators constituted the "same job" for purposes of the EPA.

In its defense, Virginia Tech presented evidence regarding three other male employees who held fundraising positions similar to those held by the plaintiffs and who were paid less than the plaintiffs. The evidence showed that these four male employees received salaries of between $34,000 and $48,000 annually. Evidence also was presented that an additional male employee holding a similar position earned $49,500 annually.

Supervisors overseeing the fundraising staff at Virginia Tech testified concerning the hiring process and the manner in which an employee's salary is determined. Elizabeth Flanagan, the Vice President for University Development and University Relations at Virginia Tech and the final decision-maker for establishing salaries for all employees working as fundraisers, stated that individual salary determinations necessarily involve some subjectivity, because fundraisers are hired to develop personal relationships with donors.

Flanagan and several other supervisors testified regarding the gender-neutral factors they consider in making salary recommendations and decisions. Those factors included fund-raising experience, sales experience, and advanced degrees. According to Thimothy Corvin, Associate Vice President for Development, an applicant's experience in work involving sales shows critical skill development that is an indicator of potential success in fundraising.

All three plaintiffs eventually left their positions with Virginia Tech. Hofberg's employment with Virginia Tech ended in August 2006, while Hanes and Maron departed in April 2008 and October 2008, respectively.

## II.

On appeal, the plaintiffs argue that the district court erred: (1) in setting aside the jury verdict in favor of Maron on her retaliation claim and entering judgment as a matter of law in favor of the defendant; (2) in setting aside the jury verdict in favor of Maron and Hanes on their wage claims and awarding a new trial on those claims; and (3) in entering judgment as a matter of law on Hofberg's wage claim. We address these arguments in turn.

## A.

We begin with Maron's retaliation claim and her argument that the district court erred in setting aside the jury verdict in her favor and in granting Virginia Tech's post-trial motion for judgment as a matter of law on that claim. We review the district court's decision de novo, viewing the evidence in the light most favorable to Maron, and drawing all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility. See Anderson v. G.D.C.,

7

Inc., 281 F.3d 452, 457 (4th Cir. 2002).  Judgment as a matter of law is warranted only when the evidence has failed to provide a legally sufficient basis on which a jury could have rendered its verdict in favor of the non-moving party.  Fed. R. Civ. P. 50.

The relevant portion of Title VII prohibits discrimination against any employee who "has opposed any . . . unlawful employment practice."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, Maron was required to show that she: (1) engaged in a protected activity; (2) her employer acted adversely against her; and (3) the protected activity and the adverse action were causally connected.  See Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).  The parties do not materially dispute that Maron engaged in a protected activity by filing informal and formal complaints of sex discrimination.  Rather, the central focus of their dispute is whether Maron presented sufficient evidence from which a jury could conclude that Virginia Tech acted adversely against Maron, and that any such action occurred as a result of her protected activity.

To qualify as an adverse action under the anti-retaliation provision of Title VII, the employer's action must be "materially adverse" to the employee and be capable of dissuading a reasonable employee from complaining about

8

discrimination. <u>Burlington No. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006). A materially adverse action is not limited to one that affects terms or conditions of employment; however, "petty slights, minor annoyances, and simple lack of good manners" do not qualify as adverse actions, because such actions typically would not deter an employee from complaining. <u>Id.</u> at 64, 68.

In the present case, Virginia Tech asserts that the district court correctly determined that the trial record did not contain evidence allowing a jury to conclude that Maron suffered a materially adverse action. Virginia Tech contends that, at most, a jury could have found that Maron suffered "petty slights." We disagree with Virginia Tech's arguments.

Viewing the evidence in the light most favorable to Maron, we hold that the jury could have concluded that Maron was subjected to actions capable of dissuading a reasonable employee from complaining about discrimination. We base this conclusion on three sets of circumstances that occurred after Maron engaged in the protected activity of filing complaints of sex discrimination.

The first set of circumstances arose while Maron was employed to raise funds for the College of Engineering. In February 2008, Maron received a disciplinary memo from her supervisor concerning her repeated email communications with

9

Flanagan regarding personal issues. After Maron received this memo, Flanagan met with Maron regarding the email communications and other matters. Maron testified that during the meeting with Flanagan, Flanagan told her that in addition to the email communications, Maron otherwise had "shown very poor judgment," and that she needed to "stop pursuing the things that [she was] pursuing or [Maron would] ruin [her] career in a very public way." According to Maron, Flanagan warned that if Maron wished to keep her job, she "needed to become invisible" and "stay off the radar for the next six months at a minimum." Maron further maintained that Flanagan stated she would be "watching [Maron] very, very closely."

In addition, Maron testified that her supervisor advised her that he did not "know what [Maron] did, but whatever [she] did, [she] really pissed [Flanagan and Corvin] off," and that they "had it out for [her]." Although the record also contains evidence that Flanagan was frustrated with Maron's "poor judgment" related to her work with donors, we nevertheless conclude that a jury could have found: (1) that Flanagan's statements threatening to terminate Maron's employment were based on Maron's complaints of sex discrimination; and (2) that such statements constituted a materially adverse action because they could have dissuaded a reasonable employee from making or

10

reporting an incident of discrimination.  See White, 548 U.S. at 68.

Maron also presented evidence of two additional circumstances that the jury could have determined were materially adverse actions on the part of Virginia Tech.  That evidence related to: (1) Maron's work performance in fundraising for the College of Engineering; and (2) actions allegedly taken by Virginia Tech while Maron was ill and unable to work.

Maron testified that while working to raise funds for the College of Engineering, she expected to receive a promotion and a salary increase based on her "benchmark" achievements. However, Maron stated that her benchmarks were "spontaneously changed" without cause, and that she failed to achieve "two pieces of the benchmarks that were unachievable for anyone," one of which was required of Maron and not required of other employees.

With regard to her absence from work due to illness, Maron presented evidence that she used three months of "sick" leave permitted under the Family and Medical Leave Act[2] when she contracted mononucleosis.  Maron testified that during this period of sick leave, her supervisors attempted to replace her.

---

[2] 29 U.S.C. §§ 2601 to 2654.

We recognize that other evidence in the record conflicted with Maron's testimony concerning whether her fundraising benchmarks improperly were altered, and whether her supervisors had attempted to replace her while she was ill and unable to work. However, when construed in the light most favorable to Maron, her account of these actions, as well as her testimony regarding Flanagan's warnings, provided a legally sufficient basis on which a jury could have concluded that she suffered materially adverse employment actions that were causally connected to her earlier reports of sex discrimination. Therefore, based on all the above evidence, we conclude that the district court erred in entering judgment as a matter of law in favor of Virginia Tech on Maron's retaliation claim.

We next observe that Virginia Tech alternatively moved for a new trial in the district court on the retaliation claim, an argument not addressed by the district court. Under Federal Rule of Civil Procedure 50, when a court grants a renewed motion for judgment as a matter of law and has before it an alternative motion for a new trial, the court "must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial." Fed. R. Civ. P. 50(c)(1). Because the district court did not make this required

12

conditional ruling, we remand the case for consideration whether a new trial should be granted on Maron's retaliation claim.  See Havird Oil Co., Inc. v. Marathon Oil Co., Inc., 149 F.3d 283, 288 (4th Cir. 1998) (citing Mays v. Pioneer Lumber Corp., 502 F.2d 106, 109 (4th Cir. 1974), for the proposition that a district court's failure to follow Rule 50(c) is error).

B.

Maron and Hanes contend that the district court erred in setting aside the jury verdict on their wage claims, and in granting a new trial on those claims.  We review a district court's decision to grant a new trial for abuse of discretion. Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 500 (4th Cir. 2001); see Fed. R. Civ. P. 59(a).

In ruling on a motion for a new trial, a court weighs the evidence and considers the credibility of witnesses.  King v. McMillan, 594 F.3d 301, 314 (4th Cir. 2010).  A court will award a new trial when the verdict was against the clear weight of the evidence, was based on false evidence, or would result in a miscarriage of justice.  Id. at 314-15.  The decision to grant or deny a motion for a new trial lies within the district court's discretion.  Id.  We will reverse a court's ruling only upon "a definite and firm conviction that the [trial] court [] committed a clear error of judgment in the conclusion it reached

13

upon a weighing of the relevant factors." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (citation omitted).

To establish a prima facie case of sex discrimination under the EPA, a plaintiff must prove: (1) that her employer has paid different wages to employees of opposite sexes; (2) that the employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions. Brinkley v. Harbour Recreation Club, 180 F.3d 598, 613 (4th Cir. 1999) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 189 (1974)). After a plaintiff presents a prima facie case, the burden of persuasion and the burden of production shift to the defendant. Id.

To avoid liability, the defendant must establish an affirmative defense by a preponderance of the evidence and demonstrate that the wage disparity was based on a permissible factor listed in 29 U.S.C. § 206(d)(1). Brinkley, 180 F.3d at 613. Those factors include an employer's use of a seniority system, a merit system, a system based on production, or an employer's application of "any other factor other than sex." 29 U.S.C. § 206(d)(1). In the present case, Virginia Tech asserted that the wage disparities identified by the plaintiffs were explained by permissible factors other than sex, namely, the other employees' education, previous work experience, and prior compensation.

14

The district court held that Maron and Hanes established their prima facie case, but determined that the jury verdict was against the clear weight of the evidence supporting Virginia Tech's affirmative defense. The court stated:

> Viewing the [] evidence as a whole, it is clear that Virginia Tech did not compensate on the basis of gender; Virginia Tech compensated on the basis of experience. This comports with testimony from Corvin and Flanagan who stated that the best predictor of future fundraising success is past sales experience. The [] evidence could not be clearer: Virginia Tech's compensation decisions were driven by legitimate, gender-neutral concerns. [Maron and Hanes] produced no credible evidence at trial demonstrating that "relevant sales experience" was merely a pretext for discrimination. Because the jury's finding that Virginia Tech violated the EPA is against the clear weight of the evidence, a new trial is proper.

Maron and Hanes challenge this ruling, asserting that the jury verdict in their favor was not against the clear weight of the evidence. Maron and Hanes contend that Virginia Tech failed to produce evidence that the wage disparities "actually" were based on employees' experience, and instead showed only that the wage disparities "could have been" based on employees' experience. According to Maron and Hanes, Virginia Tech could not establish its affirmative defense without producing evidence of the actual compensation recommendations made when the male comparators were hired. We disagree with these arguments.

Virginia Tech was not required to produce the "best evidence" to demonstrate that it based compensation decisions on

15

gender-neutral factors. Rather, Virginia Tech was required to prove that it was more likely than not that factors other than gender were used in establishing the salaries of the plaintiffs and the male comparators. See Brinkley, 180 F.3d at 613. We agree with the district court's decision that the clear weight of the evidence demonstrated that Virginia Tech proved its affirmative defense.

Virginia Tech submitted evidence of four male employees who were performing the same work as the plaintiffs but were paid less than all three plaintiffs, and of one male employee who was paid less than two of the plaintiffs. With regard to the male comparator evidence submitted by the plaintiffs, two of those higher-paid male employees had numerous years of relevant experience that the plaintiffs did not have, and the third higher-paid male employee had earned a higher salary in a previous position.

Virginia Tech also introduced testimonial evidence from four supervisors who explained the gender-neutral factors that they consider when establishing an employee's salary. This testimony was corroborated by the actual hiring recommendations made involving the plaintiffs, which had been created by Corvin and submitted to Flanagan. Those recommendations referenced each candidate's education, experience, and comparable market salaries.

16

Although Maron and Hanes presented evidence to support their theory of the case, their evidence was insufficient to establish "a definite and firm conviction" that the trial court committed a "clear error" in determining that the clear weight of the evidence supported Virginia Tech's affirmative defense.[3] See Westberry, 178 F.3d at 261. Thus, we affirm the district court's decision granting Virginia Tech's motion for a new trial on the wage claims of Maron and Hanes.

## C.

Finally, we address whether the district court erred in granting Virginia Tech's motion for judgment as a matter of law with respect to Hofberg's wage claim on the basis that her claim was time-barred. As previously explained, we review de novo a district court's decision to grant such a motion. See Anderson, 281 F.3d at 457.

The statute of limitations for a claim alleging a violation of the EPA is two years. 29 U.S.C. § 255(a). However, for causes of action arising from an employer's "willful violation"

_____

[3] We find no merit in Maron's and Hanes' additional argument that the district court applied an erroneous legal standard by stating that the plaintiffs failed to show that the gender-neutral basis for Virginia Tech's salary determinations was "pretext." The record establishes that the district court applied the correct legal framework in this case and did not engage in the burden-shifting analysis appropriate in the context of other types of discrimination cases.

17

of the EPA, the limitations period is three years.  Id.  Hofberg last was employed by Virginia Tech in August 2006, more than two years before the complaint in this case was filed in November 2008, and more than two years before Hofberg "opted in" as a plaintiff in December 2008.  Therefore, Hofberg's claim was untimely unless she proved that Virginia Tech willfully violated the EPA, triggering application of the extended three-year limitations period.  A willful violation occurs when an employer knew, or showed reckless disregard for the fact, that its conduct was prohibited.  See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

After reviewing the record and considering the parties' arguments on this issue, we agree with the district court's conclusion that there was insufficient evidence from which a jury could conclude that Virginia Tech willfully violated the EPA.  See Fed. R. Civ. P. 50.  The present record shows that to ensure the equitable treatment of its employees, Virginia Tech engaged in annual reviews of the employment market for fundraisers.  The supervisors responsible for establishing the salaries of these employees testified regarding the numerous gender-neutral factors they considered in making salary decisions.  Based on this evidence, we conclude that the district court did not err in determining that Hofberg failed to prove that Virginia Tech willfully violated the EPA.  We

therefore affirm the court's finding that Hofberg's wage claim was time-barred and the court's entry of judgment as a matter of law in favor of Virginia Tech.

## III.

In sum, we hold that the district court erred in entering judgment as a matter of law with respect to Maron's retaliation claim, because the evidence provided a legally sufficient basis on which a jury could have concluded that Virginia Tech's actions were materially adverse and resulted from Maron's protected activity. We therefore reverse that portion of the district court's judgment, and remand for a determination whether a new trial should be granted on that issue.

We further hold that the district court did not err with respect to any of the plaintiffs' wage claims. We conclude that the district court did not abuse its discretion in granting a new trial on the wage claims of Maron and Hanes, because the jury verdict was against the clear weight of the evidence. We also conclude that the district court did not err in entering judgment as a matter of law on Hofberg's wage claim, because it

was time-barred.  Accordingly, we affirm the district court's decisions with respect to the plaintiffs' wage claims.[4]

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

---

[4] In light of these holdings, we reject the plaintiffs' argument that they were entitled to liquidated damages as a result of Virginia Tech's failure to comply with the EPA in good faith.