**Michele BRINK, Plaintiff,**

v.

**Robert A. McDONALD, Secretary of Veterans Affairs, Defendant.**

**Civil Action No. 4:14cv24.**

United States District Court,
E.D. Virginia,
Newport News Division.

Signed July 28, 2015.

James H. Shoemaker, Jr., for Plaintiff.

Kent P. Porter, Daniel P. Shean, for Defendant.

## MEMORANDUM ORDER

MARK S. DAVIS, District Judge.

This matter is before the Court on Michele Brink's ("Plaintiff") Motion for a New Trial, ECF No. 70. Although Plaintiff has requested a hearing, the Court finds that oral argument is unnecessary to resolve such motion. Fed.R.Civ.P. 78(b); E.D. Va. LOC. R. 7(J).

### I

Beginning on April 21, 2015, the Court conducted a jury trial in this Title VII employment discrimination action. The trial concerned a single claim: whether Robert A. McDonald, the Secretary of Veterans Affairs, ("Defendant") had engaged in hostile work environment harassment of Plaintiff based on her race while Plaintiff was employed as a Telecare nurse at the Hampton Veterans Affairs Medical Center ("HVAMC"). After four days of trial, the jury returned a verdict finding that Plaintiff had proven by a preponderance of the evidence that she was subjected to a hostile work environment based on her race, but had failed to prove that Defendant "knew or should have known of the racial harassment and failed to take prompt remedial action reasonably calculated to end the harassment." Special Verdict Form, ECF No. 64. Thus, on April 28, 2015, the Court entered judgment in favor of Defendant. Judgment, ECF No. 66.

On May 26, 2015, Plaintiff filed the instant motion for a new trial. Plaintiff asserts that the jury's verdict was contrary to the clear weight of the evidence. Plaintiff requests a new trial on the following issues: "1) when she was subjected to a hostile work environment because of race; 2) whether [Defendant] knew or should have known of the racial harassment and failed to take prompt remedial action reasonably calculated to end the harassment;

and 3) on all issues related to damages." Pl.'s Mem. Supp. Mot. for New Trial at 10, ECF No. 71.

## II

■■ Federal Rule of Civil Procedure 59 governs motions for a new trial. Such rule provides, in pertinent part: "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). Under Rule 59, it is well established that a court may grant a new trial on the ground that the verdict was against the clear weight of the evidence. *See King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010); *Roedegir v. Phillips*, 85 F.2d 995, 995–96 (4th Cir.1936). "In considering a motion for a new trial, a trial judge may weigh the evidence and consider the credibility of witnesses...." *King*, 594 F.3d at 314 (quoting *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir.1995)). "[I]f he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." *Id.* (quoting *Chesapeake Paper Prods.*, 51 F.3d at 1237).

■■ Title VII makes it an "unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *Freeman v. Dal–Tile Corp.*, 750 F.3d 413, 420 (4th Cir.2014) (quoting *EEOC v. R & R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001)). "[T]o prevail on a Title VII claim that a workplace is racially hostile, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's ... race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir.2015) (en banc) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir.2011)). Plaintiff's motion concerns only the jury's verdict with respect to the fourth element of Plaintiff's hostile work environment claim.

■■ To establish the fourth element in a case involving coworker harassment, a plaintiff must demonstrate that the employer "knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir.2003) (en banc) (citations omitted). Thus, "[O]nce the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment." *EEOC v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir.2011) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir.2008)) (citation omitted). In considering the reasonableness of an employer's remedial action, "[t]here is no exhaustive list or particular combination of remedial measures or steps that an employer need employ to insulate itself from liability." *Id.* (internal quotation marks omitted). Rather, the Fourth Circuit has, "[a]mong other things, ... considered the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective." *id.* Importantly, "the mere fact that harassment reoccurs in the workplace, either by the same offender or

different offenders, does not, *ipso facto*, allow a jury to conclude that an employer's response was not reasonably calculated to end the harassment." *Id.* (citation omitted).

Here, by answering Question 1 of the Special Verdict Form in the affirmative, the jury determined that Plaintiff had established the first three elements of a hostile work environment claim.[1] By answering Question 2 of the Special Verdict Form in the negative, in this coworker harassment case, the jury concluded that Plaintiff had failed to establish the fourth element of a hostile work environment claim, namely that any harassment was imputable to Defendant.[2] Plaintiff challenges only the latter finding.

### III

■ Plaintiff's motion focuses on whether the failure of HVAMC personnel to question Plaintiff's coworkers, about her allegations regarding "racial tensions" and being referred to as "the white girl," precluded the jury from finding that Defendant took prompt remedial action reasonably calculated to end the harassment. In other words, Plaintiff asserts that, given the evidence that HVAMC personnel did not directly question Plaintiff's coworkers about some of her allegations, it was against the clear weight of the evidence for the jury to answer Question 2 of the Special Verdict Form in the negative.

After fully considering the submissions of the parties and reviewing the testimony and evidence from the trial, the Court finds that the jury's verdict was not against the clear weight of the evidence. Specifically, it was not against the clear weight of the evidence for the jury to conclude that, following Plaintiff's initial complaint of harassment, HVAMC took prompt remedial measures reasonably calculated to end the harassment, including a reasonable investigation of Plaintiff's allegations.[3]

The testimony of multiple witnesses, including Diane Seekins (the director of HVAMC for most of Plaintiff's time in Telecare), and Plaintiff, as well as exhibits introduced into evidence, established that HVAMC maintained extensive antiharassment policies while Plaintiff worked in Telecare. *See, e.g.*, Trial Tr. vol. 3, 448–63, ECF No. 73 (Seekins Test.); Trial Tr. vol. 2, 304–08, ECF No. 74 (M. Brink Test.); Trial Exs. 43–46. As part of HVAMC's policies, when an employee reports harassment to her supervisor, the supervisor must conduct a fact-finding to investigate the harassment allegations. Trial Tr. vol. 3, 453–54 (Seekins Test.); Trial Ex. 43. To conduct a fact-finding, the supervisor will request a written statement on a Report of Contact form to ascertain the specifics of the harassment, including what happened and when it happened. Trial Tr. vol. 3, 453–54 (Seekins Test.). However, an employee complaining of harassment

---

**1.** Question 1 of the Special Verdict Form asked: "Has the Plaintiff Michele Brink proven by a preponderance of the evidence that she was subjected to a hostile work environment because of race in that she was subjected to unwelcome conduct, because of race, sufficiently pervasive or severe to alter the terms and conditions of employment and create a hostile or abusive working environment."

**2.** Question 2 of the Special Verdict Form asked: "Has the Plaintiff Michele Brink prov-

en by a preponderance of the evidence that the Defendant Robert A. McDonald, Secretary of Veterans Affairs, knew or should have known of the racial harassment and failed to take prompt remedial action reasonably calculated to end the harassment?"

**3.** To the extent Plaintiff adduced evidence that conflicts with the evidence set forth below, the Court finds the evidence described below to be more credible than Plaintiff's evidence to the contrary.

need not report the specifics of the alleged harassment on any particular form. *Id.* at 472–73. An email will suffice. *Id.* Nevertheless, in practice, it is very common for HVAMC to use the Report of Contact form to request statements from individuals during harassment investigations. *Id.* at 489, 545 (Orie Test.). HVAMC requires an employee to provide specific details of any alleged harassment before HVAMC confronts the alleged harasser because launching an investigation without the specific factual basis of the alleged harassment could be construed as harassing *the employee originally accused of harassment. Id.* at 459. Similarly, HVAMC's strict confidentiality policy with respect to harassment allegations and investigations prevents a supervisor from discussing insufficiently specific allegations of harassment with the coworkers of the person alleging harassment. *Id.* at 459–60; Trial Ex. 43.

Although Plaintiff testified to the contrary, at trial, Pamela Orie—Plaintiff's immediate supervisor—credibly testified that, on the afternoon of Friday, March 2, 2012, Plaintiff first complained of being called "the white girl." Trial Tr. vol. 3, 487–88 (Orie Test.). In response, Ms. Orie informed Plaintiff that she would need a statement from Plaintiff and the specifics of the "who, what, when" of her allegations of being called "the white girl." *Id.* at 545. Also, that same day, Ms. Orie contacted Leon Walker, HVAMC's EEO Manager, and sought advice on how to proceed with Plaintiff's complaint. *Id.* at 487–88; Trial Ex. 18. Mr. Walker emailed Ms. Orie and told her to have Plaintiff "contact EEO." Trial Ex. 18. Ms. Orie forwarded the email to Plaintiff, but Plaintiff refused mediation through HVAMC's EEO process. *Id.*

Pursuant to HVAMC's policy, on March 5, 2012, the Monday following Plaintiff's March 2, 2012 complaint, Ms. Orie went to the Telecare unit and informed the Telecare employees that she would be conducting a fact-finding and would be requesting that the Telecare nurses document any past or present concerns on a Report of Contact form. Trial Tr. vol. 3, 548–49. That afternoon, Ms. Orie emailed the Telecare nurses to follow up on her earlier in-person meeting, and included a Report of Contact form for the nurses to fill out if they had any concerns. Trial Ex. 19. Although Plaintiff did not fill out a Report of Contact form, *see* Trial Ex. 23, on March 6, 2012, she emailed her supervisors, including Ms. Orie and Mr. Frazier, and union representatives to request a meeting regarding, *inter alia*, "racial slurs and being subjected to [p]olitical and [r]acial comments." Trial Ex. 27.

On March 9, 2012, as a result of Plaintiff's request, Ms. Orie, Mr. Frazier, and other HVAMC personnel met with Plaintiff to discuss her complaints. At the meeting, Plaintiff complained of racial tensions and being called "the white girl;" however, Plaintiff did not provide any details of specific incidents of racial tension, refer to any specific conversations that offended Plaintiff, or relay who had called Plaintiff "the white girl." Trial Tr. vol. 3, 552–54 (Orie Test.). Ms. Orie reiterated to Plaintiff that she needed a statement from Plaintiff providing the specifics of "who, what, [and] when" regarding Plaintiff being called "the white girl." *Id.* at 554; *see* Trial Ex. 33. Plaintiff agreed to provide a statement with such details. Trial Tr. vol. 3, 554 (Orie Test.).

Although HVAMC had not received specific details regarding Plaintiff's allegations of racial tensions and being called "the white girl," HVAMC took a number of remedial actions to address her general allegations. First, on March 9, 2012—the same day as Plaintiff's second meeting regarding her harassment allegations—Ms. Orie offered Plaintiff an interim workplace

adjustment that would permit her to continue to perform her "current work assignment and current tour of duty" from a different location away from Telecare while Ms. Orie conducted the fact-finding. Trial Ex. 30. The interim workplace adjustment would not have altered Plaintiff's duties, hours, pay, or responsibilities. Trial Tr. vol. 3, 555 (Orie Test.). Plaintiff refused the interim adjustment. Second, on March 14, 2012, Ms. Orie conducted a policy review of HVAMC's anti-harassment policy with all of the Primary Care staff, including the Telecare nurses. *Id.* at 556–57; *see* Trial Exs. 31–32. In connection with the meeting, each Telecare nurse was provided with a copy of HVAMC's anti-harassment policy. Trial Tr. vol. 3, 557 (Orie Test.).

On March 14, 2012, in response to Ms. Orie's request at the March 9, 2012 meeting, Plaintiff emailed Ms. Orie, her second-level supervisor Mr. Frazier, and other HVAMC personnel to describe her harassment allegations in detail. *Id.* at 649 (M. Brink Test.); Trial Ex. 33. Plaintiff's email did not include details regarding the "who, what, where, [or] when" of her allegations of being called "the white girl" or racial tensions. Trial Tr. vol. 3, 500–01, 559–60 (Orie Test.).

On March 15, 2012, Ms. Orie and Mr. Frazier met with Plaintiff and her union representative once more. *Id.* at 502. At the meeting, Plaintiff complained of racial tensions and being called "the white girl." *Id.* at 558–59. Plaintiff did not, however, provide any specific details about such allegations. *Id.* Ms. Orie, for a third time, reiterated to Plaintiff that she needed to provide a statement with the details of her allegations of harassment. *Id.* at 560–61. Plaintiff never provided any such details. *Id.* at 564–65.

Taken together, along with other evidence adduced at trial, the above facts indicate that it was not against the clear weight of the evidence for the jury to conclude that Defendant took remedial measures reasonably calculated to end the harassment of Plaintiff. HVAMC personnel attempted to investigate Plaintiff's allegations, but Plaintiff failed to provide them with the requested details, despite at least three requests for such details. Although there was no evidence that any of Plaintiff's supervisors asked Plaintiff's coworkers whether Plaintiff's skeletal allegations regarding being called "the white girl" were true, the jury permissibly could conclude that Defendant's actions were reasonable. Plaintiff failed to provide Defendant with the details of her harassment allegations, and Defendant reasonably could have refrained from questioning Plaintiff's coworkers, based solely on Plaintiff's generalized allegations, to maintain confidentiality and avoid conducting an investigation that itself might have been considered harassment because of the lack of specificity in Plaintiff's allegations. Moreover, even without any detailed allegations, to prevent any continued harassment while Ms. Orie attempted to conduct a fact-finding, Ms. Orie offered Plaintiff an interim work adjustment that would have altered only the location at which Plaintiff performed her job. Plaintiff refused. Ms. Orie also reviewed HVAMC's anti-harassment policy with the Telecare nurses and provided them with copies of such policy. Finally, unlike with her allegations of being called "the white girl," when Plaintiff did provide her supervisors with detailed harassment allegations, her supervisors took prompt remedial action to address such allegations.[4] In short, the evidence

4. First, in Plaintiff's March 14, 2012 email to Ms. Orie, Mr. Frazier, and other supervisors, Plaintiff alleged, in detail, that on that morning one of her coworkers, Monica Brandon, had waived her finger at Plaintiff in an offensive way after Plaintiff indicated to another

adduced at trial regarding the remedial actions that HVAMC's personnel undertook to investigate and remedy the harassment of Plaintiff demonstrates that Plaintiff is not entitled to a new trial because the jury's verdict *was not against the clear weight of the evidence* or based on false evidence, and did not cause any miscarriage of justice. *See King,* 594 F.3d at 314.

For the forgoing reasons, the Court **DENIES** Plaintiff's Motion for a New Trial, ECF No. 70.

The Clerk is **REQUESTED** to send a copy of this Memorandum Order to all counsel of record.

**IT IS SO ORDERED.**

coworker that she would be taking four hours of leave. Trial Ex. 33; *see* Trial Tr. vol. 3, 503 (Orie Test.). In light of Plaintiff's detailed allegations, Ms. Orie contacted Ms. Brandon, informed her of her right to union representation, requested a Report of Contact from Ms. Brandon with her account of the events, and met with Ms. Brandon after receiving a Report of Contact. Trial Tr. vol. 3, 503 (Orie Test.). From her investigation, Ms. Orie determined that Ms. Brandon had violated HVAMC policy and, therefore, issued a written counseling. *See id.;* Trial Ex. 38.

Second, in a May 4, 2012 email to Mr. Frazier, Ms. Orie, and other supervisors, Plaintiff alleged, in detail, that on such date Ms. Solomon and Ms. Brandon had a conversation that included inappropriate racial comments. Trial Ex. 40; Trial Tr. vol. 3, 515 (Orie Test.). Plaintiff's email included quotations of Ms. Solomon's and Ms. Brandon's comments. Trial Ex. 40. In response, Ms. Orie verbally counseled Ms. Solomon that her comments were inappropriate. Trial Tr. vol. 3, 515 (Orie Test.).